# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| DAISY MAE BYRD MOBLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV415-226 |
| | ) | |
| | ) | |
| CLAIRE FERMONT LANGLAIS, | ) | |
| MARC JACOBS INTERNATIONAL, | ) | |
| LLC, and COTY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Proceeding *pro se*, Daisy Mobley sues Coty, Inc., "a global beauty company" (doc. 7 at 3); Marc Jacobs International ("MJI"), a fashion design company; and Claire Langlais, a Coty employee, for various torts related to defendants' alleged misappropriation of plaintiff's name and her autobiography's artwork. Doc 1-3. Defendants move to dismiss (doc. 3) for failure to state a claim.

# I.   BACKGROUND[1]

Sometime "in mid 2006," Langlais visited Carriage Jewelers in Savannah, Georgia while in town for the grand opening of the local Marc Jacobs store. Doc. 1-2 at 4. Mobley, a Carriage employee, had displayed in the window copies of her autobiography, "Southern Girl." *Id.* Intrigued, Langlais purchased the book after Mobley shared with her the story of her "poverty stricken life" and "told [Langlais] all about [her] hopes and dreams and [the] book['s] purpose." *Id.*

During that conversation, Mobley mentioned her sister, Lola. Doc. 1-2 at 4. Langlais, claiming "that she might write her own book someday," then asked whether the names in "Southern Girl," including Daisy and Lola, "were changed to protect the innocent." Doc. 18 at 3. Mobley told her no, at which point Langlais "repeated [them] several times in her excitement." Doc. 1-2 at 4; *see also* doc. 18 at 3 ("'Lola . . .

---

[1]   On a motion to dismiss, this Court must accept as true all well-pled, *factual* allegations in the Complaint and construe them in the light most favorable to plaintiff. *See Ingram v. Regal Cinema Theater*, 2015 WL 8968179 at * 1 (S.D. Ga. Dec. 15, 2015). Plaintiff's *pro se* status dictates that the Court apply a further "liberal construction" gloss on that already-plaintiff-friendly review framework. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' *Estelle*, 429 U.S., at 106, 97 S.Ct. 285, and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid.* (internal quotation marks omitted). *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").")." The facts that follow reflect those principles.

Oh, how pretty . . . Lola, [Langlais] said in her excitement. Then as if she struck gold, she repeated "Oh Lola," and asked her companion if he liked that as well.") (ellipses in original). Struck by the oddity of the exclamation, Mobley "made a point of remembering what [Langlais] looked like." Doc. 18 at 5. She also made a point of remembering her outfit that day -- it was "black and white with gold accessories" -- which, "ironic[ally]," are the same colors as "the 'Daisy' [perfume] box." *Id.* at 16.

Some years later,[2] Coty licensed from Marc Jacobs several perfumes, including "Oh, Lola," and "Daisy Dream." Doc. 1-2 at 4. The packaging for the perfumes and "Southern Girl" are "very similar," because "Langlais decided [Mobley's] artwork belonged to her and used it as the catalyst to design" the perfume packaging. Doc. 18 at 4.

Incensed, Mobley filed this action in Chatham County State Court on July 6, 2015. Doc. 1-2 at 4. Not a lawyer, her Complaint lacked a clear statement of the claims she asserted. In response to defendants'

---

[2] Mobley never says when the perfumes came to market, but she does claim that she "knew of *Oh Lola* [in 2006,] six years before it launched." Doc. 1-2 at 4; *see also* doc. 27 at 4 ("Daisy perfume launched in spring 2007, a few months after [Mobley's] conversation with [Langlais]."). Even if her claims fall beyond any applicable statute of limitation, defendants failed to raise that affirmative defense and so waived it. *See Corvin v. Debter*, 281 Ga. 500, 501 (2001) (defendant "raised no affirmative defense based upon the statute of limitation[s] and that defense has therefore been waived").

motion to dismiss (asserting lack of copyright, and no-trademark-infringement, arguments), she says that "this is not an infringement case, rather a "Wrongful Use of Name and Property . . . Exploitation claim."[3] Doc. 18 at 2 (ellipses in original). She also asserts a fraud claim against Langlais, *see id.* at 3, and misappropriation and right of publicity claims against all defendants.[4] *See id.* at 6.

---

[3] Although she includes significant material on copyright law, *see* doc. 18 at 8-12, Mobley declares that "[t]his is not an infringement claim." *Id.* at 13; *see also id.* at 19 ("To counsel, this is not an infringement claim!!!"); *id.* at 21 ("Since she does not possess a registered copyright paper, Plaintiff filed her claim based upon the wrongful use of name/property and exploitation.") (emphasis omitted). The Court thus does not address the viability of any copyright or trademark infringement claims.

Even if Mobley had not disclaimed "infringement claims," no trademark or copyright claim could survive. First, Mobley admits she has never registered a copyright which alone kills that claim. *See* doc. 18 at 21; *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986) ("[A]n owner's cause of action for infringement of that copyright is unenforceable until compliance with the formalities of registration, including payment of fees and deposit of copies of the work, is shown."). And any trademark claim perishes because, assuming Mobley can establish that she owns a valid and protectable mark, defendants' marks are neither similar to Mobley's book's artwork (*see* doc. 7 at 12), nor likely to cause confusion with "Southern Girl." *See Light for Life, Inc. v. Our Firm Found. for Koreans, Inc.*, 2015 WL 631138 at * 5 (N.D. Ga. Feb. 12, 2015) ("The analysis of . . . federal and state trademark-related claims is materially the same. To prevail on these claims, a party must prove that (1) it owns a valid and protectable mark, and (2) the opposing party's use of an identical or similar mark is likely to cause confusion.").

[4] As defendants correctly note, Mobley's Complaint is not a model of clarity. Indeed, only after defendants moved to dismiss did she illuminate actual claims (her initial complaint contained a factually detailed recitation of events, but never identified real claims, just Mobley's anger at what transpired). *See* doc. 18. Defendants also correctly note that a "plaintiff cannot amend h[er] complaint through argument

4

## II. ANALYSIS

### A. Fraud

"The elements of a fraud action are an intentional false representation by the defendant designed to induce the plaintiff to act or refrain from acting, upon which the plaintiff justifiably relies, resulting

---

made in [a] brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). But this is not a motion for summary judgment and Mobley is not a sophisticated litigant like the Miccosukee Tribe with high-powered counsel.

Instead, the court finds itself at a much earlier stage of proceedings with a litigant who is unquestionably *not* well-versed in legal matters. And while even *pro se* litigants must abide by procedural rules, *see Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), their pleadings, as noted above, are entitled to a liberal construction. *Erickson*, 551 U.S. at 94 ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and cites omitted); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). It is through that lens that the Court construes Mobley's response to defendants' motion to dismiss as a motion to amend her complaint, which the Court **GRANTS**.

Doing so imposes no prejudice on defendants. They replied to Mobley's response and have had multiple other opportunities to address her after-the-fact amendments. What's more, considering Mobley's response as an amendment demonstrates fidelity to Fed. R. Civ. P. 8's demand that facts trump legal conclusions when considering whether a plaintiff states a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'") (emphasis added); *id.* ("A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added). Mobley pled ample facts in her original complaint and, when read in conjunction with her response, adequately ties those facts to theories of recovery. That's not to say she states a claim, but she does enough such that refusal to consider her response would advance no goal mandated by the Federal Rules or the rules of this Court.

in damage to the plaintiff." *Perry Golf Course Dev., LLC v. Hous. Auth. of City of Atlanta*, 294 Ga. App. 387, 396 (2008). Langlais, Mobley contends, committed fraud by asking "Plaintiff about names in Plaintiff's book (Southern Girl), and whether they were changed to protect the innocent." Doc. 18 at 3. Although she told Mobley she intended to one day write her own book, Langlais allegedly knew she never would and instead intended to "deceptively befriend the Plaintiff and [take] possession of the Plaintiff [and her] sister's name[s]." *Id.*

The only possible representation, defendants contend, is Langlais' assertion that she might one day write her own book. Doc. 21 at 4. Because that concerns future events, it cannot, in their eyes, undergird a fraud claim. *Id.* Regardless, Mobley cannot show materiality or reliance, since, say defendants, Langlais knew the names "Daisy" and "Lola" from having glanced at "Southern Girl" before approaching Mobley to discuss the book. *Id.*

It's true, as a general proposition, that statements concerning future events cannot give rise to a fraud claim. *See Marler v. Dancing Water Lakes, Inc.*, 167 Ga. App. 99, 100 (1983). But if the future event is one "which the party making the representation knows will never

occur," liability can attach. *Id.* Nevertheless, Mobley's claim fails because nothing about anything Langlais said is material to any action Mobley took, has taken, or will take.

"[I]n determining materiality, the question is not whether the information relied upon was 'important' in some abstract sense; the question must be determined within the context of a specific decision." *McKesson Corp. v. Green*, 299 Ga. App. 91, 94 (2009). Here, however, Mobley points to no decision on her part that Langlais' alleged misrepresentation could have affected, much less did. She complains only that defendants profited from their Daisy and Lola perfume lines. Even if Langlais disingenuously questioned plaintiff about her name, doing so did not precipitate any decision by Mobley. Hence, her fraud claim fails.

## B.   Misappropriation

One "of several different torts relating to the invasion of one's privacy," the tort of misappropriation "consists of the following elements:" (1) the appropriation of another's name (or likeness); (2) without their consent; (3) "for the financial gain of the appropriator." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752 (2013). Because "the

interest protected in an appropriation case is in the plaintiff's exclusive use of his or her name," no requirement exists "in Georgia law that the plaintiff must have any inherent or preexisting commercial value in his or her name." *Id.*

> Indeed, "the courts in Georgia have recognized the rights of private citizens . . . as well as entertainers . . . not to have their names and photographs used for the financial gain of the user without their consent." . . . While a private citizen may not have the same commercial value in his or her name and likeness that a celebrity may have, or any preexisting commercial value in his or her name and likeness at all for that matter, that would not foreclose that person from pursuing a cause of action against a wrongdoer who appropriated the person's name and likeness for their own commercial gain.

*Id.*

Still, misappropriation protects "the proprietary interest one has in the *exclusive* use" of a name. *Shiho Seki v. Groupon, Inc.*, 333 Ga. App. 319, 325 (2015). Put differently, the misappropriated name must specifically identify the plaintiff, not someone else. *See id.* (misappropriation of a pen name actionable if "the pseudonym has become widely known to the public as closely identified with the plaintiff") (citing *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 862 (E.D. Pa. 1985)); *cf. Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir. 1983) (holding that, even though

neither his name nor picture were used, Johnny Carson's common law right to publicity was invaded through defendant's use of the phrase "Here's Johnny" for advertising purposes).

Defendants' offending perfumes use the names "Daisy" and "Lola," neither of which has any real tie to Mobley or her sister. It is beyond peradventure that many people use those names, none of whom can lay claim to them simply because it's their name. Contrast that with a person who owns a well-known chain of ice cream stores named "Daisy Dream." Assuming the stores opened before the perfume, the owner of the ice cream "Daisy Dream" arguably has a misappropriation claim, much like Johnny Carson did against the portable toilet company that filched a signature phrase from his ubiquitous television show. *See Here's Johnny Portable Toilets*, 698 F.2d at 835.

Put differently, there is nothing exclusive or proprietary about Mobley's use of those names. She wrote a book, but never copyrighted it (hence, she has no protectable interest in "Southern Girl," much less the names Daisy or Lola), *see* doc. 18 at 21, and never claims to use her name as a trade name such that any member of the public would "closely identif[y]" it with plaintiff. *See Shiho Seki*, 333 Ga. App. at 326.

9

"Daisy" is not closely identified with plaintiff no matter that she wrote a book containing the name. Her misappropriation claim, therefore, fails.[5]

## III. CONCLUSION

Although she pled ample facts, Mobley fails to state any claim for relief. Accordingly, defendants' motion to dismiss (doc. 6) should be

---

[5] Misappropriation and right of publicity are two names for the same claim. *See Shiho Seki*, 333 Ga. App. at 324 ("Sometimes referred to as a right to publicity, misappropriation of someone's name or likeness constitutes one of four recognized forms of invasion of privacy. . . .").

> Georgia recognizes a right of publicity to protect against the appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator . . . whether the person whose name and likeness is used is a private citizen, entertainer, or . . . a public figure who is not a public official. *Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 296 S.E.2d 697, 703 (1982). The right of publicity may be defined as [an individual's] right to the exclusive use of his or her name and likeness. *Id.* at 700 (citation omitted). Violation of the right of publicity is a state tort. *Id.* at 703. *See also Alonso v. Parfet*, 253 Ga. 749, 325 S.E.2d 152, 153 (1985) ( The courts in this state have long recognized that one who makes an unsanctioned appropriation of another's name or likeness for his own benefit may be liable to that person in tort.) (citation omitted).

*Toffoloni v. LFP Publ'g Grp., LLC*, 572 F.3d 1201, 1205 (11th Cir. 2009) (quotes omitted). For the same reasons that her misappropriation claim fails, then, Mobley's right of publicity in her name (none) remains intact. Her motion to amend her complaint to specifically add that claim (doc. 27), then, is **DENIED** as futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

Mobley also states that "defendants took away the Plaintiff's Fifth Amendment Rights." Doc. 18 at 24 (emphasis omitted). That too fails since only state action can violate the Constitution and defendants unquestionably were not state actors. *See Gibson v. New York*, 569 F. App'x 810, 814 (11th Cir. 2014) ("As a matter of substantive constitutional law . . . rights secured by the Constitution are protected only against infringement by governments.").

**GRANTED** and plaintiff's Complaint **DISMISSED**. Her motions to amend (doc. 27) and to "move her claim forward" (doc. 31) are **DENIED**.

**SO REPORTED AND RECOMMENDED**, this __25th__ day of February, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA